UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| Elise P.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-261-JPH-MJD |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Claimant Elise P. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. § 423(d).  Judge James P. Hanlon has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  [Dkt. 11.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB in July 2020, alleging an onset of disability as of June 5, 2020.

[Dkt. 5-5 at 2.]  Claimant's application was denied initially and upon reconsideration, and a

hearing was held before Administrative Law Judge Gregory Moldafsky ("ALJ") on September

14, 2021.  [Dkt. 5-2 at 45.]   On November 26, 2021, ALJ Moldafsky issued his determination

that Claimant was not disabled.  *Id.* at 16.  The Appeals Council then denied Claimant's request

for review on April 26, 2022.  *Id.* at 2.  Claimant timely filed her Complaint on June 29, 2022,

seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.

Disability is defined as the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the

Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the

claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does

not have a "severe" impairment, one that significantly limits her ability to perform basic work

activities, she is not disabled; (3) if the claimant's impairment or combination of impairments

meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt.

404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at

step three, and is able to perform her past relevant work, she is not disabled; and (5) if the

claimant is not found to be disabled at step three, cannot perform her past relevant work, but can

perform certain other available work, she is not disabled.  20 C.F.R. § 404.1520.  Before

continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of June 5, 2020. [Dkt. 5-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "lumbar degenerative disc disease with sacroiliac dysfunction and radiculopathy, complex regional pain syndrome (CRPS), and migraine headaches." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 19. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b), except she requires the option to sit and stand option that would permit 4 hours of standing and walking in 8-hour workday; occasional operation of foot controls with right lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, balance, kneel, and crouch; never crawl; occasional exposure to extreme cold and extreme heat; and never work at unprotected heights.

*Id.* at 20 (footnote omitted).

At step four, the ALJ found that Claimant was not able to perform her past relevant work. *Id*. at 24. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as bench assembler, electronics worker, and electrical assembler. *Id*. at 26. Accordingly, the ALJ concluded that Claimant was not disabled. *Id.*

### IV. Discussion

Claimant raises numerous issues in her brief. Each of the issues will be addressed, as appropriate, below.

#### A.  ALJ's Consideration of CRPS Symptoms

Claimant alleges that the symptoms caused by complex regional pain syndrome ("CRPS") in her right leg, along with symptoms from lumbar degenerative disc disease (specifically neuropathy) and migraine headaches, render her disabled. The ALJ found each of these conditions to be a severe impairment and acknowledged that Claimant alleged that she suffered from disabling symptoms caused by them. *See* [Dkt. 5-2 at 21].

In his decision, the ALJ recognized his obligation to evaluate Claimant's subjective symptoms pursuant to 20 C.F.R. § 404.1520c and SSR 16-3p. [Dkt. 5-2 at 20.] SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could

reasonably be expected to produce the individual's alleged symptoms.  SSR 16-3p, 2017 WL

5180304, at *3 (Oct. 25, 2017).  Second, the ALJ must evaluate the intensity and persistence of a

claimant's symptoms, such as pain, and determine the extent to which they limit his ability to

perform work-related activities.  *Id.* at *3-4.  At this step, the ALJ considers the claimant's

subjective symptom allegations in light of the claimant's daily activities; the location, duration,

frequency, and intensity of pain and limiting effects of other symptoms; precipitating and

aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment

other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. §

416.929(c)(3).  When assessing a claimant's subjective symptoms, ALJs are directed to "consider

the consistency of the individual's own statements.  To do so, [they] will compare statements an

individual makes in connection with the individual's claim for disability benefits with any

existing statements the individual made under other circumstances."  SSR 16-3p (S.S.A. Oct. 25,

2017), 2017 WL 5180304, at *8.  The ruling also explains that "[p]ersistent attempts to obtain

relief of symptoms, such as increasing dosages and changing medications, trying a variety of

treatments, referrals to specialists, or changing treatment sources may be an indication that an

individual's symptoms are a source of distress and may show that they are intense and

persistent."  *Id.* at *9.

  The ALJ further recognized that where, as here, a claimant has CRPS, that impairment

must be evaluated pursuant to SSR 03-2p, *available at* 2003 WL 22399117.  CRPS "describe[s]

a constellation of symptoms and signs that may occur following an injury to bone or soft tissue.

The precipitating injury may be so minor that the individual does not even recall sustaining an

injury."  *Id.* at *1.  Relevant here, SSR 03-2p instructs that CRPS often produces a degree of pain

that is "out of proportion to the severity of the precipitating injury."  *Id.* at *2.  "In other words, a

claimant who experiences this condition will often not have the sort of objective clinical findings

that would normally be expected to produce the amount of pain the individual is reporting."

*Mark L. v. Saul*, 2019 WL 2560099, at *3 (N.D. Ind. June 21, 2019).  In addition, "the symptoms

associated with this condition are often transitory—they 'may be present at one examination and

not appear at another.'"  *Id.* (quoting SSR 03-2p).  Indeed, SSR 03-2p notes that "conflicting

evidence in the medical record is not unusual in cases of [CRPS] due to the transitory nature of

its objective findings and the complicated diagnostic process involved."  Therefore, "while ALJs

often point to evidence of inconsistencies in the record as an indication a condition is not as

severe as a claimant says, that same reasoning might not apply when a claimant has [CRPS], as

to which such contradictions are common."  *Mark L.*, 2019 WL 2560099, at *3.  "Because . . .

[CRPS] often produce[s] pain and other symptoms out of proportion to the 'objective' medical

evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a

proper understanding of the disease[ ]."  *Johnson v. Colvin*, 2014 WL 2765701, at *1 (E.D. Wis.

June 18, 2014).

> In this case, the ALJ found as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.    [Claimant] acknowledged a modest range of activities, including attending appointments, performing household activities, simple meal preparation, grocery shopping, driving short distances, paying bills, caring for family dogs, attending church, wedding [sic] flowerbeds, watching television, watching some of her son's tennis matches, socializing by telephone and text message, and spending time with her family.  (Hearing testimony and Exhibits 5E and 6E).  This level of activity,

> though not conclusive as to any issue, is consistent with the residual functional
> capacity as found.

[Dkt. 5-2 at 21.]  The ALJ then summarized the medical evidence of record, as well as the

findings of the two consultative examinations Claimant underwent.  The ALJ noted the

abnormalities found by two MRIs and an electromyogram, which included disc degeneration at

L5-S1 with annular bulge but no impingement, mild facet joint arthropathy at L4-5 with no

exiting impingement, prominent sacral Tarlov cysts extending through the sacral foramen, a

focal tear of the anterosuperior labrum and cysts in the left hip, and L5 radiculopathy of the right

lower extremity.  He also noted numerous normal findings at various exams, as well as the fact

that her CRPS was described as "stable" and that she was noted to be doing well after the

periodic ketamine infusions that were used to treat her CRPS.  *Id.* at 21-23.  The ALJ concluded:

> Overall, the record does not support limitations that would prevent the claimant
> from working within the residual functional capacity.  [Claimant's] own
> description of her activities, coupled with the findings on examination as noted in
> detail above, demonstrate that she can perform functions within the assessed
> residual functional capacity.  No single factor mentioned here is alone conclusive
> on the issue to be determined, but when viewed in combination and in conjunction
> with the medical history and examination findings they suggest that the claimant
> is not as limited as she claims.  Given the claimant's history of lumbar
> degenerative disc disease with neuropathy and CRPS as well as migraine
> headaches, I find that she is limited to reduced range of light work with postural
> and environmental limitations.

*Id.* at 23.

The ALJ thus gave two reasons for his subjective symptom evaluation:  Claimant's

"description of her activities" and "the findings on examination."  The ALJ implicitly

acknowledges that engaging in the activities in question—"attending appointments, performing

household activities, simple meal preparation, grocery shopping, driving short distances, paying

bills, caring for family dogs, attending church, wedding [sic] flowerbeds, watching television,

watching some of her son's tennis matches, socializing by telephone and text message, and spending time with her family"—does not equate to working full time. The ALJ does not explain, and it is not readily apparent, how engaging in this "modest range of activities" is inconsistent with Claimant's subjective symptom allegations. The ALJ also does not acknowledge the manner in which Claimant testified she engaged in some of these activities: "caring for family dogs" was limited to "putting dog food in a bowl," [Dkt. 5-2 at 49]; she walks "very slowly" in the grocery store and asks her son for help, *id.* at 54; and when she attends church she sometimes has to leave because the noise and the activity level is too much for her, *id.* at 56. It is error for an ALJ to point to a claimant's daily activities as contradicting the claimant's subjective symptom allegations without considering the manner in which the activities are performed. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008).

The ALJ also fails to explain why the exam findings that he summarizes are inconsistent with Claimant's subjective symptom allegations. "A summary is not analysis, as it does not explain *why* the evidence summarized undermined Plaintiff's statements about [her] symptoms or limitations, or which statements were inconsistent." *Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) (emphasis in original) (citing *Craft*, 539 F.3d at 677-78). Presumably the ALJ believed that the numerous normal findings in various exams were inconsistent with Claimant's subjective symptom allegations; however, as noted above, SSR 03-2p instructs ALJs to consider the fact that "conflicting evidence in the medical record is not unusual in cases of [CRPS] due to the transitory nature of its objective findings and the complicated diagnostic process involved" and that symptoms of CRPS "may be present at one examination and not appear at another." The ALJ's failure to explain specifically how the exam findings he

summarized led him to discredit[2] Claimant's testimony about her subjective symptoms is

therefore particularly problematic in light of her CRPS diagnosis and her testimony that her

symptoms, and therefore her ability to engage in activities, varied day-to-day and that her pain

level from CRPS was well-controlled by ketamine infusions for an unpredictable amount of time.

*See* [Dkt. 5-2 at 59] ("I get random pain flares because the Ketamine doesn't last.  It typically

lasts between four and six months. . . . [S]ometimes I only get three months of out of it. . . .

There's no real rhyme or reasons why it stops, really.").  Indeed, the ALJ did not explain whether

he did not believe the nature and severity of the symptoms Claimant alleged that she experienced

during the periodic "flare ups" of her CRPS or whether he believed that those flare ups would not

happen frequently enough (or last long enough) to preclude work.

     The Court's review of an ALJ's credibility determination is generally deferential unless

"if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is

patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).  The ALJ's determination

may be patently wrong where he fails to "'build an accurate and logical bridge between the

evidence and the result.'"  *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting

*Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)).  The ALJ must justify his subjective

---

[2] In her brief, the Commissioner makes the rather perplexing claim that "a review of the decision does not show any language to suggest the ALJ disbelieved either Plaintiff or her doctors."  [Dkt. 9 at 10.]  Inasmuch as both Claimant and her treating physician stated that Claimant's pain and other symptoms rendered her disabled and the ALJ found the opposite, the ALJ necessarily disbelieved Claimant and her physician.  As the Seventh Circuit has recognized, even though SSR 16-3p, unlike its predecessor, SSR 96-7p, requires that the ALJ assess a claimant's subjective symptoms, but not her credibility, "[t]he change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character[, but] obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'"  *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).  The ALJ failed to do so in this case.  The undersigned finds that remand is required to correct this failure.  On remand, the ALJ must specifically address how Claimant's pain flare ups and any side effects from the ketamine infusions affect her ability to work.[3]

## B.  ALJ's Assessment of Medical Opinions

The record contains five medical opinions regarding Claimant's physical abilities:  two from state agency physicians who reviewed some of Claimant's medical records[4] but did not examine her; two from physicians who performed consultative examinations of Claimant; and one from her treating physician.  Because Claimant advanced this claim after March 27, 2017, the applicable law no longer required the ALJ to give special weight to the opinion of Claimant's treating physician.  *See* 20 C.F.R. § 404.1520c(a).  Rather, the ALJ was required to evaluate all

---

[3] Claimant testified that while she continued to work as an athletic trainer for some time after she developed CRPS, she eventually stopped working on the advice of her doctor because she had suffered severe side effects from two rounds of ketamine infusions.  [Dkt. 5-2 at 54-55.]

[4] Claimant points out that the state agency physicians did not consider the results of several objective tests and examination findings.  *See* [Dkt. 7 at 12].  The Commissioner responds that "[t]he regulations do not require reviewing physicians to demonstrate consideration of every piece of objective evidence."  [Dkt. 9 at 13.]  Be that as it may, the fact that certain objective evidence was not available to the state agency physicians is certainly relevant to the consideration of their opinions; the less thorough their understanding of Claimant's complete medical history, the less supportable are their opinions.

medical opinions on an equal basis for "persuasiveness."  *Id.*  ALJs are instructed to evaluate all

medical opinions using factors including: whether the opinion is supported by objective medical

evidence; the opinion's consistency with other evidence; the professional's relationship with the

patient, including the length, frequency, purpose, and extent of treatment; and the professional's

specialization.  20 C.F.R. § 404.1520c(c).  In addition, the regulation expressly recognizes that

"[a] medical source may have a better understanding of your impairment(s) if he or she examines

you than if the medical source only reviews evidence in your folder."  20 C.F.R. §

404.1520c(c)(3)(v).  After considering the relevant factors, an ALJ must articulate how

persuasive he finds each medical opinion in his decision.  20 C.F.R. § 404.1520c(b).  The most

important factors ALJs will use in determining the persuasiveness of a medical opinion are

supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  Opinions that are supported by

and consistent with objective medical evidence will be most persuasive.  20 C.F.R. §

404.1520c(c)(1)-(2).

In this case, the two state agency physicians reached two different conclusions, with Dr.

Shayne Small opining that Claimant was limited to sedentary work[5] and Dr. J.V. Corcoran

opining that Claimant was capable of light work with certain postural limitations.  The ALJ

evaluated those opinions as follows:

> As for medical opinion(s) and prior administrative medical finding(s), I cannot
> defer or give any specific evidentiary weight, including controlling weight, to any
> prior administrative medical finding(s) or medical opinion(s), including those

---

[5] The Commissioner states in her brief that Dr. Small found that Claimant "could do light work
with the added limitations of standing/walking two hours a day, sitting six hours a day, as well as
postural and environmental restrictions."  [Dkt. 9 at 12-13.]  Dr. Small actually found that
Claimant was limited to sedentary work.  *See* [Dkt. 5-3 at 12] ("The objective medical evidence
in file which include x-rays, physical exams, and diagnosis support a sedentary RFC for this
claimant.").

from medical sources. I have fully considered the medical opinions and prior administrative medical findings as follows: I find the opinion of J. V. Corcoran, M.D., of the Disability Determination Services (DDS) persuasive insofar as Dr. Corcoran, concluded that the claimant can perform approximately light work and can occasionally lift 20 pounds; frequently lift 10 pounds; stand and or walk about 6 hours in an 8-hour workday; and sit about 6 to 6 [sic] hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to wetness and hazards. (Exhibit 4A). Limitations to this degree are consistent with the medical records as a whole as well as the type and degree of treatment of needed, including injections and prescribed medications. (See e.g., Exhibits 8F and 11E). Further, these limitations are supported by the physical examination findings showing some limited range of motion in her right lower extremity with degenerative changes shown on objective imaging. (See e.g., Exhibits 4F and 6F). However, based on the totality of the evidence, including the physical examination findings, I conclude that the claimant has greater postural as well as environmental limitations to temperature extremes and unprotected heights. Shayne Small, M.D., of DDS, found that the claimant is likewise limited, but can stand and walk approximately two hours in an 8-hour work day. (Exhibit 2A). I find Dr. Small's opinion less persuasive and inconsistent with the overall type and degree of treatment needed. Further, it is unsupported by the physical examination findings at the consultative examination showing normal gait, motor strength, motor function, and sensation. (Exhibit 5F). Based on the totality of the evidence, including the physical examination findings and the claimant's own description of her activities including some driving, household chores and shopping, I conclude that the claimant can stand and walk as much as 4 hours in an 8-hour workday.

[Dkt. 5-2 at 23.] It is entirely unclear what the ALJ means when he says that Dr. Small's opinion is "inconsistent with the overall type and degree of treatment needed." There is no indication in the record that there is any treatment for CRPS other than the treatment Claimant has received; nor is it true that an impairment cannot be disabling unless it requires a certain "type and degree" of treatment. Further, just as the ALJ does not explain how Claimant's daily activities are inconsistent with Claimant's allegation of disabling pain, the ALJ also does not explain how those activities are inconsistent with Dr. Small's opinion. Finally, while the ALJ notes that Dr. Small's opinion is "unsupported by the physical examination findings at the consultative examination showing normal gait, motor strength, motor function, and sensation. (Exhibit 5F),"

the ALJ does not account for the finding from the other consultative examination that Claimant

"cannot walk without crutches.  She is not able to walk heel to toe, walk on heels, or walk on

toes due to complex regional pain."  [Dkt. 5-7 at 62] (Exhibit 4F).  As noted above, SSR 03-2p

instructs that these types of inconsistent findings are to be expected with cases of CRPS due to

the "transitory nature of its objective findings."

> The ALJ evaluated the opinions of the two consultative examiners as follows:
>
> I find the opinion of consultative examiner, Harishchandra Rathod, M.D., persuasive, insofar as it is suggested that the claimant can perform light work with postural and environmental limitations.  Specifically, Dr. Rathod concluded that the claimant has the ability to perform activities involving sitting, standing, moving about, and carrying and would have no significant difficulty performing activities like kneeling, crawling, squatting, climbing ladders and scaffolds or walking up and down steps or performing manipulative activities. (Exhibit 5F). This is consistent with the medical records as a whole as well as the physical examination findings showing normal gait motor strength, reflexes and sensation. (Exhibit 5F).  Further, this is supported by the type and degree of treatment needed and the claimant's own description of her activities.  Based on the totality of the evidence I conclude that the claimant has greater postural limitations.
>
> I likewise find the opinion of consultative examiner, Houman Kiani, M.D., persuasive insofar as it is suggested that the claimant can perform light work with postural and environmental limitations.  Specifically, Dr. Kiani concluded that the claimant should be able to walk 3 to 4 hours of an eight-hour workday and it was concluded that she could probably carry fewer than 20 pounds frequently, and more than 20 pounds on occasion. (Exhibit 4F).  This is likewise consistent with the physical examination findings and is supported by the overall time and degree of treatment needed. (Exhibits 5F, 8F, and 11E).

[Dkt. 5-2 at 24.]  Again, the ALJ does not explain how the "type and degree of treatment needed

and the claimant's own description of her activities" is more consistent with these opinions than

with Claimant's allegations and the other opinions of record.  Nor does the ALJ explain his

understanding of Dr. Kiani's finding that Claimant could walk "3 to 4 hours" per day—does that

mean three hours on some days and four hours on other days?  Does it mean that Dr. Kiani was

not sure whether Claimant could walk three hours per day or four hours per day?

Even more perplexing is the ALJ's statement that he found Dr. Rathod's opinion "persuasive, insofar as it is suggested that the claimant can perform light work with postural and environmental limitations." *Id.* Dr. Rathod suggested no such thing. Rather, Dr. Rathod appears to have found no restrictions whatsoever on Claimant's abilities, concluding:

> Based on today's medical exam it would be reasonable to expect that [Claimant] has the ability to perform activities involving sitting, standing, moving about, and carrying. She would have NO difficulty performing activities like kneeling, crawling, squatting, climbing ladders and scaffolds or walking up and down steps. [Claimant] should NOT have any difficulties performing activities involving both hands like writing, zipping, buttoning or using computers, office stationary [sic] and office equipment.

[Dkt. 5-7 at 72.] Thus, while the ALJ states that he finds Dr. Rathod's opinion persuasive and consistent with the evidence of record, in fact he rejects the opinion and finds Claimant to be significantly more limited than Dr. Rathod did.

Finally, the ALJ largely rejected the opinion of Claimant's treating physician, Dr. Wheat (whom he incorrectly refers to as Thomas Newlin, who was Claimant's attorney at the time). The ALJ explained as follows:

> I find the opinion of Thomas Newlin, M.D., unpersuasive insofar as it is suggested that the claimant can stand and walk only two hours in an 8-hour workday; can never perform postural activities such as balance, kneel, crouch and crawl; and would be off task 25 percent or more of the workday and absent more than 4 days per month. This is out of proportion to the medical records as a whole, including physical examination findings showing normal gait, motor strength and function as well as normal reflex and sensation and seems to understate the claimant's functional capacity. (Exhibit 5F). I find Dr. Newlin's opinion more persuasive insofar as the claimant can sit up to 6 hours, occasionally operate foot controls with the bilateral feet, occasionally climb ramps and stairs, and occasionally stoop. (Exhibit 1F). This portion of Dr. Newlin's opinion is consistent with medical records as a whole as well as the claimant's own description of her activities and symptoms involving her right lower extremity. (Exhibit 8F, pp. 4, 8, and 12).

[Dkt. 5-7 at 72.]  The ALJ cites to the normal findings during Dr. Rathod's exam to support his

determination that Dr. Wheat's opinion is "out of proportion to the medical records as a whole,"

but in doing so, the ALJ ignores the many medical records that show various abnormalities, the

transitory nature of CRPS symptoms, and Claimant's testimony that she has good days and bad

days and experiences "pain flares" when her ketamine infusions begin to wear off.  Given the

nature of CRPS and the instructions given in SSR 03-2p, the fact that Claimant had one

consultative examination in which all findings were essentially normal is not sufficient reason to

disregard the opinions of physicians who made abnormal findings, including Claimant's treating

physician, who had the benefit of multiple examinations and a longitudinal view of Claimant's

condition.  *See* SSR 03-2p ("The signs and symptoms of RSDS/CRPS may remain stable over

time, improve, or worsen.  Documentation should, whenever appropriate, include a longitudinal

clinical record containing detailed medical observations, treatment, the individual's response to

treatment, complications of treatment, and a detailed description of how the impairment limits

the individual's ability to function and perform or sustain work activity over time.").

The ALJ failed to properly articulate and support his reasons for finding some medical

opinions more persuasive than others.  This must be corrected on remand.

## C.  Claimant's Remaining Arguments

Claimant's remaining arguments are that the ALJ's RFC determination and his finding at

Step Five are not supported by substantial evidence.  Both of these arguments flow from the

errors identified and discussed above.  Because the ALJ is required to reevaluate his subjective

symptom evaluation and consideration of the medical opinions of record on remand, the ALJ

will necessarily also have to reconsider his RFC determination and his Step Five finding.

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's

decision be **REVERSED** and **REMANDED for further proceedings consistent with this**

**Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with

the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to

timely file objections within fourteen days after service shall constitute a waiver of subsequent

review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  12 MAY 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.